UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
LAURA COLLYMORE,                    :
                                    :
    plaintiff,                      :
                                    :
v.                                  :   CASE NO. 3:23cv1012 (VDO)
                                    :
KEITH CRENSHAW ET AL,               :
                                    :
    defendants.                     :
```

**RULING ON PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY**

The plaintiff, Laura Collymore ("Collymore"), filed this action against the defendants, Keith Crenshaw ("Crenshaw"), CNS Technology Inc. ("CNS"), and Karen Smith ("Smith"), to recover funds that plaintiff allegedly loaned to defendants Crenshaw and CNS. The plaintiff also alleges that Crenshaw fraudulently conveyed his ownership interest in a house in Encino, California to defendant Smith to prevent plaintiff from collecting against his interest in the property if she obtains a judgment against Crenshaw. Thus, plaintiff has filed a motion for a prejudgment remedy to attach the value of Mr. Crenshaw's former interest in the property that was transferred to Ms. Smith.

The Court held an evidentiary hearing on August 6, 2025. Plaintiff Collymore and defendant Smith both testified at the hearing. However, Crenshaw failed to attend the hearing. After the hearing, the parties submitted simultaneous briefs on September 8, 2025. After considering the briefs and materials

submitted by the parties, plaintiff's amended motion for a prejudgment remedy is GRANTED as to Mr. Crenshaw and as to Ms. Smith as to Count Twelve.[1]

## STANDARD

Rule 64(a) of the Federal Rules of Civil Procedure provides that in a federal action "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R Civ. P. 64(a); *see also* Novafund Advisors, LLC v. Capitala Group, LLC, No. 3:18CV1023(MPS), 2019 WL 1438179, at *1 (D. Conn. Mar. 31, 2019). Thus, this Court must apply Connecticut's prejudgment remedy statute, Conn. Gen. Stat. § 52-278a, *et seq*. Under that statute, a prejudgment remedy is available if the court finds "there is probable cause that a judgment in the amount of the prejudgment remedy sought,

---

[1] The Court notes that Ms. Smith was named as a necessary defendant in order for plaintiff to pursue the fraudulent transfer claims against Mr. Crenshaw and attach his transferred interest in the Encino property. In rendering this decision, the Court does not opine on Ms. Smith's credibility or her intent in accepting the transfer of the property. *See* Kosiorek v. Smigelski, 138 Conn. App. 695, 726 (2012), cert. denied, 308 Conn. 901 (2013) (quoting Wieselman v. Hoeniger, 103 Conn. App. 591, 598, cert. denied, 284 Conn. 930 (2007)) (finding that "'[t]he plain language in § 52-552e addresses the fraudulent intent of the debtor and makes no mention of the fraudulent intent of the transferee' . . . With respect to [] claim[s] under § 52-552e, however, there is no requirement for a fraudulent intent with respect to the transferees.")(emphasis added).

or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in favor of the plaintiff. . . ." Conn. Gen. Stat. § 52-278d(a)(1).

At this stage, the "trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits." Roberts v. Triplanet Partners, LLC, 950 F. Supp. 2d. 418, 421 (D. Conn. 2013) (quoting Balzer v. Millward, No. 3:10CV1740(SRU)(HBF), 2011 WL 1547211, at *1 (D. Conn. Apr. 21, 2011) (internal quotation marks omitted). The probable cause standard is modest, and "not as demanding as proof by a fair preponderance of the evidence." TES Franchising LLC. v. Feldman, 286 Conn. 132, 137 (2008). "The legal idea of probable cause is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence, and judgment, under the circumstances, in entertaining it." Id. "When a plaintiff is seeking a prejudgment remedy based on a fraudulent transfer, the plaintiff must establish probable cause to believe that it can prove by clear and convincing evidence that the transfer was fraudulent." Cendant Corporation v. Shelton, 473 F. Supp. 2d 307, 312 (D. Conn. 2007) (citation and internal quotation marks omitted).

A probable cause determination requires the court to determine "the validity of the plaintiff's claim and the amount of the remedy sought." TES Franchising, LLC, 286 Conn. at 145-466 (2008); Conn. Gen. Stat. § 52-278(d)(a). In determining the amount of the remedy, "[d]amages need not be established with mathematical precision, but must be based on evidence yielding a fair and reasonable estimate." Triplanet Partners, 950 F. Supp. 2d at 421 (citation and internal quotation marks omitted).

## DISCUSSION

In connection with this matter, the Honorable Vernon D. Oliver has previously granted default judgments against both CNS Technology and Keith Crenshaw.[2] (Dkt. #169 & #194.) The default judgment against Mr. Crenshaw totaled $4,450,965.96. (Dkt. #194.) Therefore, insofar as the amended motion for the PJR seeks a PJR against Mr. Crenshaw, it is granted in the same amount as the default judgment.[3] The judgment against Crenshaw establishes that probable cause exists for a PJR against him. *See* Stone Key Group, LLC v. Tardash, No. FSTCV166029872S, 2019

---

[2] The Court notes that on September 24, 2025, Judge Oliver stayed execution of the default judgment against Mr. Crenshaw as to Counts Twelve and Thirteen. (Dkt. #198.) The decision to stay the ruling on Counts Twelve and Thirteen does not alter the undersigned's findings related to the PJR, as there is still a judgment against Mr. Crenshaw on the remaining counts.

[3] The Court had previously entered a PJR against CNS Technology and the amended motion before the Court no longer seeks a PJR against CNS Technology. (Dkt. #61 & #110.)

WL 5681372, at *4 (Conn. Super. Ct. Oct. 11, 2019)("Because the amount sought in the prejudgment remedy is based on a judgment and prior rulings of this court, the court finds that the plaintiff has demonstrated probable cause in support of its application.").

Plaintiff's case against defendant Keren Smith remains pending. Plaintiff brought claims against Ms. Smith for fraudulent transfer under C.G.S. 52-552e(a)(1) and 52-552f(a). Dkt. #89. In docket entry #194, Judge Oliver articulated the standard applicable to fraudulent transfer claims as follows:

> CUFTA establishes various circumstances in which a "transfer... by a debtor" is fraudulent as to a creditor whose claim arose before the transfer was made. Conn. Gen. Stat. § 52-552e(a); see id. § 52-552e(a)(1) (stating that intentional fraudulent transfer is made where debtor "inten[ded] to hinder, delay or defraud a creditor of the debtor"); id. § 52-552f(a) (stating that constructive fraudulent transfer is made where debtor did not receive "a reasonably equivalent value in exchange... and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer"); id. § 52-552e(a)(2) (stating that constructive fraudulent transfer is made where debtor did not receive "a reasonably equivalent value in exchange... and the debtor (A) was engaged or was about to engage in a business or transaction" in relation to which the debtor's remaining assets were "unreasonably small," or "(B) intended to incur, or believed or reasonably should have believed that [the debtor] would incur, debts beyond [the debtor's] ability to pay as they came due"). Connecticut Courts have held that a party alleging a fraudulent transfer must show "either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet [the transferor's] obligations or (2) that the conveyance was made with a fraudulent intent in which the grantee participated." *Certain Underwriters at*

*Lloyd's, London v. Cooperman*, 957 A.2d 836, 843 (Conn. 2008); *see Mirlis v. Greer*, 80 F.4th 377, 383 (2d Cir. 2023) (noting that Connecticut common law is "largely coextensive with CUFTA").

(Dkt. #194.)

Based on the evidence adduced at the PJR hearing the undersigned finds plaintiff has established probable cause sufficient to warrant the granting of a PJR as to Ms. Smith regarding the alleged fraudulent conveyance of the Encino property under G.G.S. 52-552e(a)(1). In order to prevail on her fraudulent transfer claim, the plaintiff must prove that (1) there was a transfer of an asset, (2) the creditor (i.e., plaintiff) had a claim which arose before the transfer was made, and (3) the transfer was made with intent to hinder delay or defraud the plaintiff as creditor.

The evidence produced at the PJR hearing established that Ms. Smith and Mr. Crenshaw purchased the property at issue together as joint tenants on September 23, 2021.[4] (Pl. PJR Exh. 21.) The testimony and evidence further show that Mr. Crenshaw

---

[4] Mr. Smith testified that she did not intend to have Mr. Crenshaw on the title to the property and adding him to the title was simply a mechanism to protect their daughter and have the property avoid probate in the event that Ms. Smith passed away without setting up a trust. (PJR Tr. 28:21-29:13.) While the Court does not opine on Ms. Smith's credibility, the Court notes that regardless of the reason why Ms. Smith put Mr. Crenshaw on the title, Mr. Crenshaw was undeniably on title. As such, regardless of anything else, Mr. Crenshaw was legally a joint owner from the time of purchase through the contested transfer in March 2023, as reflected on the deed as recorded on the land records.

had a contractual debt obligation to plaintiff of $1,600,000 due and payable by December 10, 2021. (Pl. PJR Exh. 8; PJR Tr. 127:2-128:6.)  Plaintiff testified that full payment had not been made on time and that by March 2023 plaintiff had been demanding that Mr. Crenshaw repay the money she had loaned him. (PJR Tr. 131:1-10.)  By March 4, 2023, at the latest, plaintiff had been demanding the repayment of the money from Mr. Crenshaw. (Pl. PJR Exh. 17.)  Ms. Collymore further testified that in response to her demands for repayment, Mr. Crenshaw acknowledged that he owed the money and promised to pay it back to Ms. Collymore. (PJR Tr. 131:1-20.)  Therefore, on March 21, 2023, when Mr. Crenshaw transferred his interest in the subject property to Ms. Smith (Pl. PJR Exh. 22), he was at least aware of his pending debt obligation to plaintiff. (Pl. PJR Exh. 17.) The Court finds that this evidence is sufficient to establish that at the time that Mr. Crenshaw, a debtor, transferred his interest in the property (i.e., an asset) to Ms. Smith, plaintiff was a creditor of Mr. Crenshaw and had demanded return of her money.

The Court also finds probable cause to believe that Ms. Collymore can prove by clear and convincing evidence that Mr. Crenshaw had the intent to hinder, delay or defraud in making the contested transfer in March 2023. The Court notes that Mr. Crenshaw has now been defaulted and found liable for breach of

contract and fraud as a result of Judge Oliver's default judgment ruling.[5] (Dkt. #194.) More so, in reviewing the factors that may be considered when determining if fraudulent intent has been established, the Court finds probable cause that plaintiff will be able to establish fraudulent intent by clear and convincing evidence at trial.

When determining if fraudulent intent has been proven, a court can consider, among other factors: (1) if the transfer was to an insider; (2) if the debtor retained control of the property after transfer; (3) if the transfer was concealed; (4) if the debtor had been sued or threatened with a suit before the transfer; (5) if the transfer was substantially all of the debtor's assets; (6) if the debtor fled; (7) if the debtor hid assets; (8) if the debtor received consideration equal to the amount transferred; (9) if the debtor was insolvent or became insolvent as a result of the transfer; (10) if the transfer occurred shortly before the debt was incurred; and (11) if the debtor transferred essential business assets to a lienor who in turn transferred the assets to an insider of the debtor. Conn. Gen. Stat. §52-552e(b).  As the plain language of the statute establishes, the list of factors set forth in 52-552e(b) is not exclusive.

---

[5] The decision to stay execution of the judgment does not affect the Breach of Contract claim (Count One) or the Fraud claim (Count Five).

In this case, Mr. Crenshaw transferred the property to the mother of his daughter and former fiancée, and he still resides at the subject property. The fact that Mr. Crenshaw has access to the property and comes and goes as he pleases suggests that Mr. Crenshaw has retained some control over the property. Additionally, the transferred asset constituted substantially all of Mr. Crenshaw's assets and there was not adequate consideration for the transfer.[6] The evidence shows that the transfer likely left Mr. Crenshaw insolvent. Additionally, the temporal proximity of plaintiff demanding the return of her money and Mr. Crenshaw's sudden willingness to part with his interest in the Encino property despite refusing to do so on multiple prior occasions (PJR Tr. 33:16-24), is additional evidence that a jury can rely on to find Mr. Crenshaw acted with fraudulent intent. Thus, there is probable cause to believe that plaintiff can establish fraudulent intent by clear and convincing evidence.

---

[6] Ms. Smith's brief argues that consideration was present in the form of satisfaction of a $144,000 debt that Mr. Crenshaw owed to Ms. Smith. (Dkt. #190 at 12.) There was no evidence or testimony produced during the PJR hearing alleging or proving that the transfer of the property was in satisfaction of a debt or any other obligation. Rather, Ms. Smith was clear that the transfer was because she caught Mr. Crenshaw on a "good day" and he agreed to do so to allow Ms. Smith to place the property in trust for their daughter. (PJR Tr. 32:21-33:24.) A jury could rely on this testimony to conclude that the plan had always been to remove Mr. Crenshaw from title without consideration.

**CONCLUSION**

For the foregoing reasons, Plaintiff's amended motion for prejudgment remedy (Dkt. #110) is GRANTED in the amount of $4,450,965.96 against Mr. Crenshaw.  Additionally, as it relates to Count Twelve under Conn. Gen. Stat. §52-552e(a)(1),[7] the amended motion for prejudgment remedy (Dkt. #110) is granted with respect to the fifty percent ownership interest that Mr. Crenshaw transferred to Ms. Smith.  Ms. Smith is prohibited from transferring, placing a lien on, or otherwise further encumbering the value of the interest that Mr. Crenshaw transferred to her.  Based on the evidence at the PJR hearing, the Court finds that the plaintiff established probable cause that this value is $999,125[8], subject to any valid lien or encumbrance currently in existence on the property.

This is not a recommended ruling. It is and has been the rule in this district that an application for a prejudgment remedy is considered non-dispositive. See <u>Lafarge Building Materials, Inc. v. A. Aiudi & Sons, LLC</u>, No. 3:15CV1203(JBA), 2015 WL 6551796, at *8 n.19 (D. Conn. Oct. 29, 2015) (listing cases). Therefore, this ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §

---

[7] In reaching this conclusion the Court finds it unnecessary to address Count 13 under Conn. Gen. Stat. §52-552f

[8] This amount represents 50% of the assessed value of the property near the time of transfer. (Def. PJR Exh. 19.)

636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 26th day of September 2025, at Hartford, Connecticut.

/s/
Robert A. Richardson
United States Magistrate Judge